UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

**ANDRE WILSON,**

      **Plaintiff,**

v.                                          **Case No. 2:13-cv-20692**

**ANDREW HUDSON, CHERYL CHANDLER,
PAUL PERRY, SGT. MILLER, MICHAEL JAROSZ,
MAJOR RHODES, JASON COLLINS,
DAVID BALLARD, Warden, and
JIM RUBENSTEIN, Commissioner,**

      **Defendants.**

**PROPOSED FINDINGS AND RECOMMENDATION**

    Pending before the court is a Motion to Dismiss filed by Commissioner Jim Rubenstein, Warden David Ballard, Associate Warden of Programs Jason Collins, Associate Warden of Security Paul Perry, and Cheryl Chandler. (ECF No. 27). This matter is assigned to the Honorable Joseph R. Goodwin, United States District Judge, and it is referred to the undersigned for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

    The plaintiff's Complaint (ECF No. 2) alleges various causes of action allegedly arising out of several instances of force used against the plaintiff on June 5, 2013. The plaintiff alleges that he was sprayed with "pepper spray" on two separate occasions, and then threatened by a West Virginia Division of Corrections ("WVDOC") K-9.

On October 16, 2013, defendants Rubenstein, Ballard, Collins, Perry and Chandler by counsel, filed a Motion to Dismiss (ECF No. 27) and a Memorandum of Law in support thereof (ECF No. 28). On that same date, defendants Hudson, Miller, Jarosz and Rhodes filed an Answer to the Complaint. (ECF No. 26). Accordingly, discovery in this matter is proceeding against those defendants and a separate Time Frame Order shall be entered to address those additional proceedings. This Proposed Findings and Recommendation will focus on the allegations against defendants Rubenstein, Ballard, Collins, Perry and Chandler (hereinafter the "Supervisory Defendants"), who have filed the instant Motion to Dismiss.

## PLAINTIFF'S ALLEGATIONS AND FACTUAL BACKGROUND

The Complaint alleges that, on June 5, 2013, the plaintiff, who was housed in the Quilliams II segregation unit, awoke with chest pain and shortness of breath. (ECF No. 2, ¶¶ 1, 2). Thus, he pushed his emergency call button in his cell. (*Id.*) Several correctional officers entered the pod to find water all over the floor because several inmates were flooding their toilets. (*Id.*, ¶ 3). The plaintiff alleges that he yelled out to Officer Andrew Hudson and Cpl. Miller, trying to get medical attention, but he was ignored. (*Id.*, ¶¶ 4, 5).

The plaintiff's Complaint further alleges that, eventually, Hudson and Miller came up the stairs to the plaintiff's cell and asked him what he wanted. (*Id.*, ¶ 11). When the plaintiff stated that he was having chest pains and shortness of breath, Hudson said, "I don't have time for your bullshit, Wilson. Go sit on your fucking bunk Wilson. Now go sit on your bunk." (*Id.*, ¶ 13). The plaintiff alleges that he continued to try to tell them that he needed medical attention, at which time Hudson directed Miller to open the

plaintiff's bean hole and Hudson grabbed a can of mace (hereinafter "pepper spray") and sprayed the plaintiff. (*Id.*, ¶¶ 14, 15).

The plaintiff alleges that Hudson sprayed him "excessively," stopped for one or two seconds and continued "hosing me and my cell down." (*Id.*, ¶ 17). The plaintiff further alleges that Miller slammed his bean hole shut and "kind of giggled saying 'let's go get the pepper ball gun.'" (*Id.*, ¶ 18). Hudson and Miller then left the pod. (*Id.*, ¶ 19).

The plaintiff further alleges that he was left in his cell for 20-25 minutes, choking and struggling to breathe, when Hudson and Miller returned with several other officers and a K-9. (*Id.*, ¶¶ 20, 21). The plaintiff alleges he was ordered to "strip out" and to squat and cough, and that he complied with those directives. (*Id.*, ¶ 23). However, the plaintiff alleges that he had to ask for the directives to be repeated because he could not hear over the loud barking of the dog outside his cell. (*Id.*, 24). The plaintiff further alleges that, after he complied with the officers' directives, he was handcuffed, shackled and led out of the pod to the Quilliams II recreation yard, where a nurse was waiting to decontaminate him. (*Id.*, ¶¶ 26, 27).

The plaintiff further alleges that, after the nurse left, Major Rhodes ordered the plaintiff to sit in a chair and not move, or else he would be sprayed again. The plaintiff acknowledged these instructions, despite the fact that he was still feeling the effects of the pepper spray. The chair was situated inside a cage in the recreation yard and the plaintiff was locked in, handcuffed behind his back, and shackled.

Less than one hour later, the plaintiff alleges that he told Officer Jarosz that he needed to go to the bathroom, and Jarosz told him to "hold it." (*Id.*, ¶¶ 38, 39).

However, the plaintiff alleges that, after about 20 minutes, he was in so much pain that he was forced to urinate on himself. (*Id.*, ¶ 42). The plaintiff further alleges that, approximately 10 minutes later, he stood up in the cage to stretch because he was stiff and sore, but was ordered to sit down by Jarosz. (*Id.*, ¶ 44). He further alleges that he was immediately pepper sprayed by Rhodes, who allegedly told the plaintiff, "Now you move again, I dare you. I'll send the dog in there on your ass, boy." (*Id.*, ¶ 48). The plaintiff further alleges that he continued to ask for medical care, but Jarosz threatened him with "more of the same if he moved again." (*Id.*, ¶¶ 50-52). Eventually, a nurse did come to squirt more water on the plaintiff; however, the plaintiff claims that it did not alleviate his pain. (*Id.*, ¶¶ 54, 55).

The plaintiff further alleges that, when the plaintiff was ultimately released to return to his cell, Major Rhodes continued to threaten him with additional pepper spray and also said, "Now, boy, if you make one more move I don't like, this dog is gonna chew you an new asshole, are we clear?" (*Id.*, ¶ 58). The plaintiff further alleges that his cell had not been cleaned and there was pepper spray everywhere. (*Id.*, ¶ 61). The plaintiff further alleges that he was refused a shower and denied cleaning supplies and clean clothes or three days. (*Id.*, ¶¶ 62, 63).

The plaintiff alleges that Warden David Ballard is aware of the excessive use of pepper spray and allegations of use of excessive force on the Quilliams units and has failed to investigate or discipline those under his supervision for the use of excessive force. (*Id.*, ¶ 67). The plaintiff further alleges that Paul Perry, the Associate Warden of Security, and Jason Collins, the Associate Warden of Programs, are in charge of supervision and discipline of correctional officers. The plaintiff further alleges that

defendants Paul Perry, Jason Collins and Cheryl Chandler are members of the Use of Force Committee, which reviews all uses of force and makes findings which are turned over to the Warden for review. (*Id.*, ¶¶ 69-72). The plaintiff also alleges that Jim Rubenstein, the Commissioner of Corrections, is charged with investigation of allegations of excessive force and is well aware of the numerous allegations of the excessive use of pepper spray at MOCC. (*Id.*, ¶¶ 74-75).

## STANDARD OF REVIEW

The Supervisory Defendants' motion asserts that the plaintiff's Amended Complaint fails to state a claim upon which relief can be granted against them, and should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

In *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007), the Supreme Court observed that a case should be dismissed for failure to state a claim upon which relief can be granted if, viewing the well-pleaded factual allegations in the complaint as true, and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." While the complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* at 555.

The Supreme Court elaborated on its holding in *Twombly* in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), a civil rights case. The Court wrote:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [*Twombly*, 550 U.S.] at 555, 127 S. Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal

> conclusion couched as a factual allegation" (internal quotation marks omitted). Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556. * * *
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

556 U.S. at 678-79. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct." *Id.* at 678.

The Supervisory Defendants' motion will be reviewed under Rule 12(b)(6) of the Federal Rules of Civil Procedure and the *Twombly/Iqbal* standard.

## ANALYSIS

The plaintiff's Complaint does not specify whether he is suing each defendant in either his or her official or individual capacity, or both. Following the holding in *Biggs v. Meadows*, 66 F.3d 56, 61 (4th Cir. 1995), the court must "examine the nature of the plaintiff's claims, the relief sought, and the course of proceedings to determine whether a state official is being sued in a personal capacity." Because the plaintiff's Complaint seeks both monetary damages and declaratory and injunctive relief, and the Supervisory Defendants' Motion to Dismiss asserts defenses under the Eleventh Amendment, as well as qualified immunity, the undersigned will address the claims as though they are brought against the Supervisory Defendants in both their official and individual capacities. The plaintiff's Memorandum of Law in Opposition to the Supervisory

Defendants' Motion to Dismiss confirms that he is suing each supervisory defendant in both capacities. (ECF No. 44 at 6).

### A. Official capacity claims.

As addressed in the Supervisory Defendants' Motion and Memorandum of Law, to the extent that the plaintiff has brought claims against these defendants in their official capacities, any claims for monetary damages cannot survive because, neither a state, nor its officials acting in their official capacities, are "persons" under the civil rights statutes. In *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989), the Supreme Court stated:

> Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself. We see no reason to adopt a different rule in the present context, particularly when such a rule would allow petitioner to circumvent congressional intent by a mere pleading device.
>
> We hold that neither a State nor its officials acting in their official capacities are "persons" under § 1983. The judgment of the Michigan Supreme Court is affirmed. [Citations omitted].

Furthermore, pursuant to the Eleventh Amendment to the United States Constitution, the power of the federal judiciary does not extend to suits by a citizen of one state against another, or to suits by a citizen against his or her own state. *Hans v. Louisiana*, 134 U.S. 1, 9 (1980). Thus, the Eleventh Amendment of the United States Constitution bars a suit in a federal court by private parties seeking to impose monetary liability upon a State or State officials, which may be paid from public funds in the state treasury. *Quern v. Jordan*, 440 U.S. 332, 337 (1979). Absent consent, federal suits against a state by a citizen of that state or another state are prohibited by the Eleventh

Amendment. *Kentucky v. Graham*, 473 U.S. 159, 199 (1985); *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 99-100 (1984). The Eleventh Amendment, however, permits a federal court to enjoin state officials to conform their future conduct to federal law, which is distinguishable from a retroactive monetary award paid from State funds. *Id.* at 337. Thus, the undersigned proposes that the presiding District Judge **FIND** that the Supervisory Defendants are immune from liability for monetary damages in their official capacities under the Eleventh Amendment.

### B. Individual capacity claims.

The plaintiff's Complaint does not allege that defendants Rubenstein, Ballard, Collins, Perry or Chandler were present at the time the plaintiff was pepper sprayed, or that they were in any way directly involved in this incident. Rather, the plaintiff's allegations appear to be limited to these defendants' roles as supervisory officials.

In *Shaw v. Stroud*, 13 F.3d 791 (4th Cir. 1994), the Court held that supervisors may be liable for the actions of their subordinates where the supervisor, by his own conduct, was deliberately indifferent to, or tacitly authorized or approved prior constitutional violations. Such liability is not based on *respondeat superior*, but rather upon "a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." 13 F.3d at 798 (*quoting Slakan v. Porter*, 737 F.2d 368 (4th Cir. 1984)). In *Shaw*, the Fourth Circuit discussed the following elements necessary to establish a supervisor's liability under 42 U.S.C. § 1983:

> 1) The supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and

>   unreasonable risk" of constitutional injury to citizens like the plaintiff;
>
> 2)  The supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices," and
>
> 3)  There was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injuries suffered by the plaintiff.

13 F.3d at 799. However, in *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court clarified that a prison official's "actual subjective awareness" of an excessive risk of harm or safety was required to hold the official liable under the Eighth Amendment. Thus, a prison official cannot be held liable for the failure to alleviate a risk that he should have perceived, but did not in fact perceive. *Id.* at 838.

> The Supervisory Defendants' Memorandum of Law contends:
>
> In [*Farmer v. Brennan*, 511 U.S. 825, 828 (1994)], the United States Supreme Court held that prison officials may be liable under the Eighth Amendment for denying humane conditions of confinement only if the official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer at 847.* The standard for "deliberate indifference" requires actual, subjective consciousness of a risk. *Id.*

(ECF No. 28 at 5-6). The Supervisory Defendants emphasize that there is no *respondeat superior* or vicarious liability under section 1983, and that the plaintiff must be able to affirmatively show that each individual defendant personally acted in a way that violated the plaintiff's Eighth Amendment rights. (*Id.* at 6).

The Supervisory Defendants' Memorandum of Law further addresses the *Shaw* elements in relation to the petitioner case. The Memorandum of Law asserts that the plaintiff cannot establish that a supervisor had actual knowledge that his subordinate

was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury "by pointing to a single incident or isolated incidence." (ECF No. 28 at 6-7). The Supervisory Defendants further assert that, while the second element concerning "deliberate indifference or tacit authorization of the alleged offensive practices" may be demonstrated by "continued inaction in the face of documented widespread abuses," *Shaw*, 13 F.3d at 799, the plaintiff herein has pled only conclusory statements that amount to no more than a recital of the legal elements of a supervisory liability claim. (*Id.* at 7-8). The Memorandum of Law specifically states:

> All the Plaintiff's allegations against these Defendants contained in the Complaint are entirely conclusory and form like recitals of the legal elements of the claim of supervisory liability, without one single supporting fact that can lead this Court to conclude the Plaintiff's claims of supervisory liability are plausible, as opposed to merely "possible." [*Iqbal*] requires that the Plaintiff demonstrate to some degree, the supporting factual basis upon which the claim for supervisor liability is based. The allegations in the Complaint do not meet this standard and, therefore, it is proper for this Court to dismiss these Defendants from the above-captioned matter.

(*Id.* at 8).

On January 29, 2014, the petitioner filed a Response in Opposition to the Supervisory Defendants' Motion to Dismiss and Memorandum of Law in support thereof (ECF Nos. 43 and 44). In the Response documents, the plaintiff emphasizes that his Complaint alleges that defendants Chandler, Collins and Perry, as members of the Use of Force Committee, "are charged with reviewing every use of force incident and deeming whether its use was justified or excessive to the need presented at the time." (ECF No. 44 at 4). The plaintiff further contends that his allegations that the failure of these defendants in their role on the Use of Force Committee and that of defendants Ballard and Rubenstein, in their administrative roles, to take action to curb "the

10

well-documented and widespread use of excessive force and the excessive use of pepper spray on secure and compliant inmates on the Quilliams II unit" amounts to tacit authorization of that conduct and should be sufficient to stand-up to legal scrutiny under *Iqbal*. (*Id.* at 3-5).

The plaintiff's Memorandum of Law further states:

> There are a large number of complaints and lawsuits that have gone forth to be heard in this court and more waiting to be heard, that contain many of these same Supervisory Defendants. Many of these plaintiffs residing [sic; reside] on the Quilliams units respectively, or rather known as Administrative Segregation. Many of those mentioned civil suits include exact or very similar allegations and the same defendants. That in itself shows that these individuals are blatantly aware of the allegations of excessive force and the excessive use of chemical agents as punishment.

(*Id.* at 5). The plaintiff's Memorandum of Law again emphasizes that "a supervisor's continued inaction in the face of documented widespread abuses . . . provides an independent basis for finding he either was deliberately indifferent or acquiesced in the constitutionally offensive conduct of his subordinates." (*Id.* at 8).

The plaintiff further contends that:

> It will be proven factual thru [sic; through] discovery that these (3) three defendants [Chandler, Perry and Collins as the Use of Force Review Team/Committee] have in many previous instances deemed a use of force as justified, only to have the prison investigator disagree with their findings and several officers were punished.
>
> There are quite a few civil suits in this high court and in state court concerning the exact abuse and deliberate indifference surrounding those abuses; or covering said abuse as it is "<u>well-known</u>" and "<u>widespread</u>" activity; however, these defendants refuse to act and fail to investigate other allegations altogether.

(*Id.* at 8-9). The plaintiff further asserts that actual knowledge of a serious risk of harm can be satisfied by circumstantial evidence. His Memorandum of Law states:

> Using circumstantial evidence liability can be premised upon objective proof showing that the use of pepper spray as punishment on non-threatening inmates locked in their cells was "long-standing, pervasive, well-documented or expressly noted by prison officials in the past and the circumstances suggest that the defendant/official being sued has been exposed to information concerning the risk and thus "must have known about it." *Farmer*, 114 S. Ct. at 1981.

(*Id.* at 9-10).

Concerning the conduct of defendants Ballard and Rubenstein, the plaintiff asserts that "supervisory liability can extend to the highest level of state government" and that "liability is ultimately determined by pinpointing the person/persons in the decision making chain whose deliberate indifference permitted the constitutional abuses to continue unchecked." *Shaw v. Stroud*, 13 F.3d at 799. (ECF No. 44 at 10). The petitioner's Memorandum of Law further states:

> When these supervisory officials both defendant David Ballard and Jim Rubenstein consistently fail to investigate the multitude of pleas from so many inmates these travesties are inflicted upon, when these defendants fail to make the slightest inquiry into the allegations reiterated again and again thru [sic; through] the grievance procedure and many other avenues of communication, then these defendants, Jim Rubenstein and David Ballard, they become part of the travesty themselves.

(*Id.* at 11).

Essentially, the petitioner's Response and Memorandum of Law in opposition to the Supervisory Defendants' Motion to Dismiss asserts that he will develop and prove specific instances of deliberate indifference by the Supervisory Defendants in the discovery process. Unfortunately, even taking the plaintiff's allegations in his Complaint as true, the Complaint contains nothing more than conclusory statements which do not allege specific facts concerning the conduct of each of these defendants upon which the court can draw a reasonable inference that they, in fact, violated the

plaintiff's constitutional rights. Accordingly, pursuant to the holdings in *Twombly* and *Iqbal,* the undersigned proposes that the presiding District Judge **FIND** that the plaintiff has not alleged a claim for relief against defendants Rubenstein, Ballard, Chandler, Perry and Collins that is plausible on its face.

Finally, the Supervisory Defendants assert that they are entitled to qualified immunity on the plaintiff's claims. (*Id.* at 9-12). Their Memorandum of Law states:

> Qualified immunity is designed to protect public officials from the threat of litigation resulting from decisions made in the course of their employment. *See Clark v. Dunn*, 195 W. Va. 272, 465 S.E.2d 374 (1995). In order to sustain a viable claim against a State agency or its employees or officials acting within the scope of their authority sufficient to overcome this immunity, it must be established that the agency, employee or official knowingly violated a clearly established law, or acted maliciously, fraudulently, or oppressively. *Parkulo v. W. Va. Bd of Probation*, 199 W. Va. 161, 483 S.E.2d 507 (1996). In other words, the State, its agencies, officials, and employees are immune for acts or omissions arising out of the exercise of discretion in carrying out their duties, so long as they do not violate any known law or act with malice or bad faith. *Id. syl. Pt. 8.*

(ECF No. 28 at 8-9). Although the defendants have cited West Virginia case law, the federal authority on qualified immunity generally applies the same principles, establishing that "[g]overnment officials performing discretionary functions are entitled to qualified immunity from liability for civil damages to the extent that 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Wilson v. Layne*, 141 F.3d 111, 114 (4th Cir. 1998). The Memorandum of Law reiterates:

> The only allegations or inactions which allegedly for [sic; form] the basis of liability against these Defendant[s] are their failure to properly investigate, train, supervise, and discipline other officers. All of Plaintiff's claims against these Defendants asserted in his Complaint, therefore, allege deficiencies in the management of subordinates, which is a discretionary

> function, and which falls under the protection and [sic; of] qualified immunity.
>
> While the Plaintiff has alleged willful, wanton, intentional, malicious, callous and reckless conduct on the part of these Defendants in an apparent attempt to defeat qualified immunity, such conclusitory [sic; conclusory] allegations are not entitle[d] to consideration under the reasoning and analysis of [*Iqbal*], absent supporting facts which would make such allegations plausible. As previously noted herein, the Plaintiff has only alleged conclusitory [sic; conclusory] statements reciting the elements of a cause of action. Therefore, it is proper for this Court to dismiss these Defendants from the above-captioned matter.

(ECF No. 28 at 9-10).

The plaintiff's Memorandum of Law in Opposition to the Motion to Dismiss asserts that these defendants should not be entitled to qualified immunity "because the law for supervisory liability was clearly established and a person in their position would know deliberately ignoring evidence and allegations from many inmates including the plaintiff about excessive force and use of pepper spray for punishment by their subordinates would make the supervisory officials liable for the very same actions they were granting tacit authorization to." (ECF No. 44 at 19).

Government officials are not liable for monetary damages if they can show that their conduct did not violate clearly-established statutory or constitutional rights of which a reasonable person would have known. *See Wilson v. Layne*, 526 U.S. 603, 609 (1999). Qualified immunity exists to protect officers in the performance of their duties unless they are "plainly incompetent" or they "knowingly violate the law." *Doe v. Broderick*, 225 F.3d 440, 446 (4th Cir. 2000).

In ruling on an issue of qualified immunity, a court must consider this threshold question: "Taken in the light most favorable to the party asserting the injury, do the

14

facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If the allegations do not give rise to a constitutional violation, no further inquiry is necessary. *Id.* If, on the other hand, a violation can be shown, then the court must determine whether the right was clearly established in the specific context of the case. *Id.*

However, in *Pearson v. Callahan*, 555 U.S. 223 (2009), the Supreme Court held that courts may decide to address whether the right is clearly established first. The *Pearson* Court noted that the doctrine of qualified immunity "balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." 555 U.S. at 230.

Because the plaintiff has not sufficiently alleged claims of supervisory liability against defendants Rubenstein, Ballard, Collins, Perry and Chandler concerning alleged Eighth Amendment violations by the other named defendants in the plaintiff's Complaint, under the first prong of the *Saucier* standard, these defendants are entitled to qualified immunity on the plaintiff's claims against them.

For these reasons, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff's Complaint fails to state any claim upon which relief can be granted against defendants Rubenstein, Ballard, Collins, Perry and Chandler in their individual capacities.

### C. The plaintiff's claim for injunctive relief.

The plaintiff's Complaint also requests that the court issue an injunction ordering the Supervisory Defendants to release him from Administrative Segregation and return him to the general population of the prison. (ECF No. 2 at 35). Because the plaintiff has not stated any plausible claim that would entitle him to relief against the Supervisory Defendants in either their official or individual capacities, and because an inmate has no independent constitutional right to be incarcerated in a particular facility or unit, *see Olim v. Wakinekona,* 461 U.S. 238, 245 (1983); *Meachum v. Fano*, 427 U.S. 215 (1976), the undersigned proposes that the presiding District Judge **FIND** that the plaintiff's Complaint does not sufficiently demonstrate a right to the requested injunctive relief from defendants Rubenstein, Ballard, Collins, Perry and Chandler.

### RECOMMENDATION

Based upon the proposed findings contained herein, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** the Motion to Dismiss filed by defendants Jim Rubenstein, David Ballard, Jason Collins, Paul Parry and Cheryl Chandler (ECF No. 27). It is further respectfully **RECOMMENDED** that the presiding District Judge leave this matter referred to the undersigned Magistrate Judge for additional proceedings concerning the plaintiff's claims against the remaining defendants.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Joseph R. Goodwin, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the

parties shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties and Judge Goodwin.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to the plaintiff and to transmit a copy to counsel of record.

August 19, 2014

Dwane L. Tinsley
United States Magistrate Judge